UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 10-86-GWU

RICHARD ROBBINS,                                                           PLAINTIFF,

VS.                      **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,             DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

1

       Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.     At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.     If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician

than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work.

4

Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having

the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Richard Robbins, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of left knee and elbow pain, chronic obstructive pulmonary disease, hypertension, a depressive disorder, and borderline intellectual functioning. (Tr. 11). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Robbins retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 15-18). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 47, "marginal" literacy skills and past relevant work of coal miner and night watchman could perform any jobs if he were capable of "medium" level exertion and also had the following non-exertional restrictions. (Tr. 47). He: (1) could not be exposed to pulmonary irritants, temperature extremes, excessive humidity, unprotected heights, or hazardous equipment; (2) could not perform a job where reading was an essential element; (3) was limited to no more than simple, one- or two-step instructions; (4) could have no more than occasional and casual contact with coworkers, supervisors, or the general public; and (5) could not perform a highly stressful job such as production rate or quota jobs. (Tr. 47). The VE responded that there were jobs that such a person could perform at the medium level, and proceeded to give the numbers in which they existed in the state and

7

national economies. (Tr. 47-8). If the individual were limited to light level exertion with: (1) no climbing of ladders, ropes, or scaffolds, kneeling or crawling; (2) no more than occasional stooping, bending, crouching, or climbing ramps or stairs; and (3) no interrupted sitting or standing longer than 30 minutes, the VE testified that there would still be light level jobs that he could perform. (Tr. 48).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition. While the physical limitations in the second hypothetical question reasonably encompass all of the limitations established in the evidence, the mental factors in both hypothetical questions are deficient.

As a preliminary matter, the plaintiff had filed a previous application for benefits which was denied in a decision by an ALJ on July 24, 2006 and not further appealed, making it administratively final. (Tr. 101-10). The plaintiff's Date Last Insured (DLI) was September 30, 2008 (Tr. 149), meaning that he was required to establish disability between July 25, 2006 and the DLI in order to be entitled to DIB..

Mr. Robbins alleged disability due to a low level of literacy, problems with his left knee, hearing, stomach, high cholesterol, and depression. (Tr. 161). The medical evidence for the relevant period contains medical visits for the conditions discussed as well as other problems, such as episodes of passing out after coughing spells (e.g., Tr. 738-42), but none of the plaintiff's examining or treating sources listed any specific physical restrictions. The plaintiff underwent a

consultative physical examination by Dr. Daniel Sean Stewart on January 26, 2008, and the physician concluded that Mr. Robbins appeared to have no physical limitations that would preclude work. (Tr. 585). He did suggest that more testing be obtained. (Tr. 586). Some testing, such as a pulmonary function study showing moderate chronic obstructive pulmonary disease (Tr. 613-14), was conducted, and, following review, Dr. P. Saranga completed a physical capacity assessment on August 6, 2008 concluding that Mr. Robbins was capable of performing "medium" level exertion, with only occasional stooping, kneeling, crouching, and crawling and a need to avoid concentrated exposure to extreme cold, heat, wetness, humidity, fumes, odors, dust, gases, and poor ventilation. (Tr. 675-81). The ALJ's second hypothetical question was consistent with Dr. Saranga's conclusions as regards to non-exertional limitations, and the plaintiff does not allege greater physical restrictions on appeal. Consequently, this portion of the decision is supported by substantial evidence.

From a mental standpoint, Mr. Robbins sought treatment from his local Comprehensive Care Center beginning in May, 2006 complaining of anxiety and anger spells, difficulty sleeping, and difficulty dealing with others. (Tr. 445). The staff psychiatrist, Dr. S. Raza, diagnosed an anxiety disorder and "rule out" an adjustment disorder with mixed features of depression and anxiety. He assigned a current Global Assessment of Functioning (GAF) score of 60, reflecting moderate symptoms per the <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed.--

Text Revision), p. 34.  After continued treatment and a number of changes in medication, Dr. Raza had modified his diagnosis by July 14, 2008 to a mood disorder, an anxiety disorder and an avoidant personality disorder, with a GAF of 58, still representing moderate symptoms.  (Tr. 818, 858).  No specific functional limitations are given.

Phil Pack, a licensed psychological practitioner, conducted a consultative psychological evaluation on February 15, 2008, and reviewed some of the plaintiff's treatment records.   (Tr. 588).   In addition to interviewing the plaintiff, he administered testing showing a full scale IQ score of 71 and a first grade reading ability, with indications on other testing that Mr. Robbins was giving good effort.  (Tr. 591-2).  Mr. Pack diagnosed a depressive disorder, alcohol dependence in full remission, borderline intellectual functioning, and a personality disorder.  (Tr. 592). In terms of functional restrictions, he opined that Mr. Robbins would have a "fair" ability to understand, remember, and follow instructions for "specific concrete information," but would be poor in doing so for academic tasks. (Id.). He would also have a fair ability to sustain attention to perform repetitive tasks, but his general adaptability and ability to relate to others was "fair to poor."  (Id.).[1]

Two non-examining state agency psychologists reviewed the record and completed mental residual functional capacity assessments. In Part I of the forms,

---

[1] The terms "fair" and "poor" were not defined.

titled "Summary Conclusions," they concluded that Mr. Robbins had a "moderately limited" ability to understand, remember, and carry out detailed instructions, complete a normal work day and work week without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, and respond appropriately to changes in the work setting. (Tr. 594-5, 670-1). In Part III of the mental assessment forms, captioned "Functional Capacity Assessment" but with instructions that it is for "elaborations on the preceding capacities" and for "explain[ing] your summary conclusions in narrative form," the state agency experts indicated that Mr. Robbins could understand and remember simple, one- and two-step instructions that were demonstrated or presented orally, could sustain attention to complete simple, repetitive tasks for two-hour segments, could tolerate coworkers and supervisors with limited but not totally precluded public contact, and could adapt to routine changes in a simple work setting. (Tr. 596, 672).

The plaintiff argues on appeal that, although the ALJ mentioned the assessments of the state agency physicians in his decision (Tr. 14), he did not include all of their limitations in his residual functional capacity conclusion and provided no rationale for rejecting them, as required by the Commissioner's regulations. 20 C.F.R. § 404.1527(f)(2). See also Social Security Ruling 96-6p.

11

The defendant responds that his Program Operations Manual System (POMS) provides that the limitations in Part I of the forms prepared by the state agency reviewers are not the true residual functional capacity assessment, which is to be reported in Part III. <u>See</u> POMS DI24520.060(B)(2). The Sixth Circuit recently declined to rule on this particular dispute, where, as here, the ALJ's functional capacity assessment did not even include all of the limitations in Part III of the form. <u>Ealy v. Commissioner of Social Security</u>, 594 F.3d 504, 516-17 (6th Cir. 2010). In the present case, as in <u>Ealy</u>, the state agency experts had specified that the claimant's ability to complete simple repetitive tasks was limited to two-hour segments, a factor which was omitted from the hypothetical questions. Accordingly, Sixth Circuit precedent establishes that the mental factors in the present case inadequately described the plaintiff's limitations.

The decision will be remanded for further consideration.

This the 15th day of December, 2010.

Signed By:

<u>G. Wix Unthank</u>

**United States Senior Judge**